## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

STANLEY L. CALHOUN,

          Plaintiff,

          v.

CITY OF CHICAGO,

          Defendant.

No. 22-cv-04579

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

Plaintiff Stanley L. Calhoun, a former Chicago Fire Department Lieutenant and Quinn Fire Academy instructor, alleges in this employment discrimination lawsuit that the City of Chicago terminated his employment based on racial animus. An investigation by the City's Office of Inspector General into a complaint of on-duty sexual misconduct found that Plaintiff had violated multiple policies; the Fire Commissioner eventually accepted the recommended sanction of termination and fired Plaintiff.

In response to the City's present motion for summary judgment, Plaintiff identifies no admissible evidence that any decisionmaker acted with racial animus and fails to show that he was meeting the City's legitimate expectations at the time of his termination. Plaintiff also fails to show that any similarly situated non-Black employee with comparable misconduct and disciplinary history received more favorable treatment. As a result, and as explained more fully below, no reasonable

jury could find Plaintiff's termination was the product of prohibited discrimination. Accordingly, the City is entitled to summary judgment.

## I.    BACKGROUND

Plaintiff Stanley Calhoun was a Lieutenant with the Chicago Fire Department, serving as an instructor at the Quinn Fire Academy. (Dkt. 43 ¶ 3.) An employee of a local Noodles & Company restaurant reported that Plaintiff sexually harassed her and kissed her without consent; the matter was reported within CFD and referred to the Internal Affairs Division, which opened an investigation. (*Id.* ¶¶ 9–11.) In time, the Internal Affairs Division then referred the matter to the Office of Inspector General (OIG), a separate City department that investigates potential misconduct by City employees. (*Id.* ¶ 17.)

OIG personnel interviewed Plaintiff, reviewed statements and other evidence gathered by the Internal Affairs Division, conducted additional witness interviews, and reviewed surveillance video from the restaurant. (*Id.* ¶¶ 17–18.) OIG found that Plaintiff, while on duty and in uniform, repeatedly sexually harassed a member of the public, that the conduct culminated in a nonconsensual kiss, and that Plaintiff made deliberately false and incomplete statements during the investigations. (*Id.* ¶ 20.) It concluded that Plaintiff violated multiple City and CFD policies and recommended discharge. (*Id.* ¶¶ 21–22.)

Assistant Commissioner Brian Casey, who recommends discipline to the Fire Commissioner, received the charges and the investigative review file, including the OIG summary, the surveillance video, and Plaintiff's written submission. (Dkt. 43 ¶¶

2

23, 25, 28.) Commissioner Casey reviewed the file, considered Plaintiff's disciplinary background and the specific facts of the case, and did not conduct any independent investigation. (*Id.* ¶¶ 25, 27, 29–31.) Commissioner Casey agreed with the discharge recommendation for reasons that included Plaintiff's on duty harassment of a member of the public, repeated unwanted comments after rebuff, a nonconsensual kiss, dishonesty during the investigations, the duration of the misconduct, Plaintiff's previous disciplinary history, and Plaintiff's role as an academy instructor. (*Id.* ¶ 31.) The Fire Commissioner concurred in Commissioner Casey's recommendation. (*Id.* ¶ 34.) Plaintiff was notified that the charges were sustained and that discharge was recommended, and he was placed on administrative leave. (*Id.* ¶ 33.) Through his union, Plaintiff submitted a rebuttal, which Commissioner Casey reviewed and found did not provide new information or mitigating circumstances that warranted a different outcome. (*Id.* ¶¶ 36–37.) Defendant then discharged Plaintiff. (*Id.* ¶ 38.)

Plaintiff filed a two-count action alleging race discrimination and retaliation under Title VII. (Dkt. 43 ¶ 2.) This Court previously granted the City's partial motion to dismiss and dismissed the retaliation claim. (*Id.*) The only remaining claim is of race discrimination under Title VII, for which the City now seeks summary judgment.

## II.    STANDARD OF REVIEW

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th

3

Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005)); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322−23 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. As the " 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted).

## III.  DISCUSSION

To withstand summary judgment, Plaintiff must point to evidence—direct or circumstantial—that his discharge was motivated by racial animus. *See Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). Plaintiff has not done so. Plaintiff offers no admissible proof that race played any role in the decision to terminate his employment, and he does not meaningfully respond to the City's argument that the record is devoid of racial animus. Arguments not addressed at summary judgment are forfeited. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); *Walton v. U.S. Steel Corp.*, 497 F. App'x 651, 655 (7th Cir. 2012). Procedure aside, Plaintiff cannot establish core elements of their claim from the undisputed facts.

### A.    No Direct Evidence of Discriminatory Intent or Motive

To avoid summary judgment on a theory of direct proof, Plaintiff must identify evidence that, if believed, proves racial discrimination without reliance on inference

4

or presumption. *See Boss*, 816 F.3d at 916. The record contains no such evidence and the undisputed facts undercut any inference of discriminatory motive. Plaintiff points to no admission of bias by any City decisionmaker, no document reflecting race-based animus, and no contemporaneous statement tying the discharge to race. Indeed, Plaintiff concedes he met Deputy Commissioner Helmold (who reported the incident for further investigation) only once and never heard racist comments from him; Assistant Commissioner Casey (who recommended discharge) never met Plaintiff at all. (Dkt. 43 ¶¶ 27, 30, 43.) Nor is there evidence that OIG investigators harbored racial bias. As such, Plaintiff identifies no discriminatory, harassing, or retaliatory comments by anyone involved in the charging, recommendation, or approval of his discipline. (Dkt. 43 ¶ 45.) Plaintiff thus cannot establish intentional discrimination.

To be sure, Plaintiff alleges that another CFD employee, Commander Swanson, made an odious, racially-charged remark concerning Plaintiff. (*Id.* ¶ 44, 45.) But Plaintiff's reliance on Swanson's remark does not, for three independent reasons, alter the summary judgment analysis. First, Swanson's alleged remark was made to a non-testifying third party and then relayed to Plaintiff; it thus constitutes hearsay within hearsay that is inadmissible at summary judgment. Fed. R. Evid. 801(c)(1); *Carlisle v. Deere and Co.*, 576 F.3d 649, 655 (7th Cir. 2009). Second, the remark was allegedly made before June 2019, more than eighteen months before the discharge decision in December 2020. (Dkt. 43 ¶ 44.) Such temporal remoteness diminishes the probative value of the alleged comment: stray remarks that are not proximate in time to the challenged action do not shed helpful light on the issue. *See*

5

*Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 959–60 (7th Cir. 2021) (two-month gap was insufficient to establish a Title VII inference of retaliation). Third, Plaintiff admitted that Swanson was not authorized to weigh in on discipline and had no input into the termination. (Dkt. ¶ 45.) Remarks by a person who played no role in the disciplinary chain cannot establish discriminatory intent for the challenged decision. *See Igasaki*, 988 F.3d at 959–60 (causal connection between firing and discrimination needed). Accordingly, the offensive remark allegedly made by Swanson cannot establish intentional discrimination.

**B.    Because Plaintiff Fails to Establish a Prima Facie Case, Burden Shifting Does Not Apply**

Absent direct evidence of discrimination, Plaintiff may rely on the burden-shifting framework of *McDonnell-Douglas*. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this approach, if Plaintiff can establish a prima facie case of discrimination, the burden shifts to the City to offer a legitimate, nondiscriminatory justification for the challenged employment actions. *Oliver v. Joint Logistics 6 Managers, Inc.*, 893 F.3d 408, 412 (7th Cir. 2018). If the City meets its burden, the burden shifts back to Plaintiff to show that the City's stated reason is pretextual. *Id.* To establish a prima facie case, Plaintiff must show: (1) he belongs to a protected class; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) another similarly situated employee outside of his protected class received better treatment from his employer. *Igasaki v. Illinois Dep't*

*of Fin. & Pro. Regulation*, 988 F.3d 948, 958 (7th Cir. 2021) (quoting *Ortiz*, 834 F.3d at 765).

Plaintiff fails to establish a prima facie case as he cannot show that (1) he was meeting the City's legitimate expectations or (2) a similarly situated person outside his protected class received better treatment. These points are explored in turn.

### 1. Plaintiff Failed to Meet Legitimate Job Expectations

The relevant inquiry focuses on the time of termination, not on prior years of service. *See Banthia v. Roche Diagnostics Operations, Inc.*, 502 F. App'x 571, 573 (2012) (citing *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 901 (7th Cir. 2005)). The undisputed materials show that OIG personnel interviewed witnesses, reviewed statements and evidence collected by IAD, conducted additional interviews, and evaluated surveillance video from the restaurant. (Dkt. 43 ¶¶ 17–18.) OIG determined that Plaintiff, while on duty and in uniform, repeatedly sexually harassed a member of the public, that the misconduct culminated in nonconsensual physical contact on October 1, 2019, and that Plaintiff made deliberately false and incomplete statements during the investigations. (*Id.* ¶¶ 20–21.) OIG identified violations of multiple City and CFD rules, including rules that prohibit dishonesty and conduct unbecoming, and recommended discharge. (*Id.* ¶¶ 21–22.)

Commissioner Casey did not conduct an independent investigation of the matter, but he reviewed OIG's summary, the surveillance video, the charges and specifications, and Plaintiff's written response; he also considered Plaintiff's disciplinary background and the specific facts of the case. (*Id.* ¶¶ 25, 28–31.)

7

Commissioner Casey agreed that discharge was the correct remedy for eight stated reasons, including on duty harassment of a member of the public, repeated unwanted comments after rebuff, the nonconsensual kiss, dishonesty in the investigations, the duration of the misconduct, previous discipline, and Plaintiff's position as an academy instructor. (*Id.* ¶ 31.) The Fire Commissioner concurred and adopted that recommendation. (*Id.* ¶¶ 32–34.)

Plaintiff admits to core conduct that violated CFD policy. Plaintiff admits that he kissed the complainant, hugged her, used pet names for her, and gave inconsistent statements to investigators. (Dkt. 56 ¶ 12); (Dkt. 50 ¶ 65.) Plaintiff further concedes that discipline was warranted. (Dkt. 50 ¶ 66.) On these facts, no reasonable jury could find that Plaintiff met the City's legitimate expectations at the time he was terminated. *See Heaton v. Sears, Roebuck & Co.*, No. 05-cv-1321, 2006 WL 3267679, at *5 (N.D. Ill. Nov. 8, 2006) ("The undisputed facts demonstrate that [plaintiff's] supervisor at the time of her termination[ ] believed that [plaintiff] engaged in unethical conduct, requiring [plaintiff's] termination. Accordingly, [plaintiff] was not meeting her employer's legitimate expectations.").

### 2. Plaintiff Fails to Identify Any Comparable Person Who Received Better Treatment

To cite a suitable comparator, Plaintiff must identify employees outside his protected class who were subject to the same standards, who had the same decisionmaker, and who engaged in similar misconduct without differentiating or mitigating circumstances, yet who received more favorable treatment. *See Mourning*

8

*v. Ternes Packaging, Indiana, Inc.*, 868 F.3d 568, 571 (7th Cir. 2017); *Igasaki v. Illinois Dep't of Fin. & Pro. Regulation*, 988 F.3d 948, 958 (7th Cir. 2021).

Plaintiff concedes that Employee B received the same punishment, which cannot support disparate treatment. (Dkt. 49 at 8); *See Igasaki*, 988 F.3d at 958. Plaintiff then offers Employees H, RR, and T, but he does not show that the same decisionmaker handled their discipline, or that they were investigated by OIG, or that they engaged in comparable misconduct. (Dkt. 49 at 8–9.) And the record shows other material differences. None of those employees was found to have lied during an official investigation. None was found to have made nonconsensual physical contact. None was found to have sexually harassed a member of the public while on duty and in uniform. *See Reives v. Illinois State Police*, 29 F.4th 887, 893 (7th Cir. 2022); *see Thomas v. ADT LLC*, No. 16 CV 9738, 2018 WL 11239714, at *3 (N.D. Ill. May 4, 2018). Plaintiff also had a distinct disciplinary record, including previous suspensions for threats, theft, false statements, and battery. (Dkt. 56 ¶ 5); (Dkt. 50 ¶ 22.) Differences in disciplinary history are legally significant and can defeat comparator status. *See Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 662 (7th Cir. 2016) ("An employee who does not have a similar disciplinary history and performance record as the plaintiff is not similarly situated."); *see also Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 860 (7th Cir. 2008). On this record, the Plaintiff has not identified any similarly situated employee outside his protected class who received more lenient treatment. Plaintiff thus cannot establish a prima facie case.

### 3. *Even If Plaintiff Could Establish A Prima Facie Case, Plaintiff Cannot Show Pretext*

Plaintiff argues that OIG lacked sufficient proof to find repeated harassment. Plaintiff admits, however, that he does not know what the complainant told OIG, that he does not know what other Noodles and Company employees told OIG, and that he has no understanding of the scope of OIG's work. (Dkt. 56 ¶ 9.) Speculation does not create a genuine dispute of material fact. *See Johnson v. Rimmer*, 936 F.3d 695, 706 (7th Cir. 2019).

At the pretext stage, the question is whether the employer honestly believed the reasons it gave for the decision, not whether the decision was correct, wise, or fair. *See Igasaki*, 988 F.3d at 958; *see Simpson*, 827 F.3d at 663. In this case, the record shows an independent OIG investigation, a detailed written report, and a recommendation of discharge based on the evidence that OIG collected. (Dkt. 43 ¶¶ 17–22. Commissioner Casey reviewed the entire file, including the video and the Plaintiff's submission, articulated specific reasons for discharge, and submitted a recommendation to the Fire Commissioner. (*Id.* ¶¶ 29–33.) The Fire Commissioner concurred and adopted the recommendation. (Dkt. 43 ¶ 34.) Plaintiff's own admissions to central conduct further undercut any inference of dishonesty. (Dkt. 56 ¶ 12); (Dkt. 50 ¶ 65); *See Hague v. Thompson Distribution Co.*, 436 F.3d 816, 824 (7th Cir. 2006) ("By admitting to the conduct at issue—swearing, yelling, and returning the boilers—Brown is left attacking Thompson Distribution's leadership and business judgment. That will not suffice.") Reliance on an independent investigative record supports the absence of pretext. *See Sinha v. Bradley University*, 995 F.3d 568, 575

10

(7th Cir. 2021) (granting summary judgment when decisionmaker relied upon independent investigation). In short, these undisputed facts preclude any reasonable finding of pretext.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.

SO ORDERED in No. 22-cv-04579.

Date: March 20, 2026

_____
JOHN F. KNESS
United States District Judge

11